UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RONNIE DANTE THOMAS,

               Plaintiff,                     Case No. 1:21-cv-296

v.                                        Hon. Hala Y. Jarbou

S. BURT, et al.,

               Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint[1] for failure to state a claim.

---

[1] Plaintiff has filed a motion seeking leave to file an amended complaint (ECF No. 5), and he has attached a proposed amended complaint (ECF No. 5-1). A party may amend once as a matter of course before a responsive pleading is served. *See* Fed. R. Civ. P. 15(a). Because Plaintiff is entitled to file an amended complaint, his motion will be granted, and his attached proposed amended complaint (ECF No. 5-1) will be docketed as his amended complaint.

### Discussion

I.      **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues the following MCF officials:  Warden S. Burt; Library Tech E. Hardiman; and Assistant Library Tech P. Mercer.

Plaintiff alleges that, following the onset of the COVID-19 pandemic, the MDOC imposed a variety of restrictions on prison operating procedures, including limitations on out-of-cell activities and access to the library and the introduction of isolation and quarantine procedures. On June 25, 2020, Plaintiff filed a motion for relief from his criminal judgment under Mich. Ct. R. 6.502(G)(2) based on the discovery of new evidence related to his sentencing.  In conjunction with the motion for relief, Plaintiff also brought a motion for release on bond.  On July 2, 2020, Plaintiff filed a motion seeking immediate consideration of his request for a hearing on an emergency motion seeking release on bond pending appeal, due to the risk of contracting COVID-19.  On July 27, Defendant Burt notified the prison population that the facility had encountered its first COVID-19 case.

On July 28, 2020, the prosecutor filed a response to Plaintiff's motion for immediate consideration of Plaintiff's request for a hearing on his request for bond on appeal. Plaintiff submitted a written request to Defendant Hardiman and an oral request to Defendant Mercer, seeking in-person library access to prepare a counter-response.  However, on July 28, 2020, Defendant Burt issued another memorandum, informing prison officials and prisoners that the institution had been placed under quarantine and that the law library and other programming

had been closed indefinitely.  Plaintiff complains that, because of the library restrictions, he missed the deadline for filing such a counter-response.

On August 3 and 13, prison officials limited general-population prisoners to the library privileges previously established for segregation prisoners, which limited to five the number of items in a law library request and limited such requests to twice each week.  Those privileges, however, were limited to prisoners who could show they had an active court case and a pending deadline.  On August 4, 2020, Plaintiff was tested for COVID-19, and he received a positive test result on August 6.  Plaintiff was taken from general population to an isolation housing unit.  Plaintiff remained in isolation for 14 days.  During his isolation, Plaintiff did not receive a meaningful opportunity to access legal materials.

On August 13, 2020, while suffering a variety of symptoms of COVID-19, including shortness of breath, body aches, dizziness, and coughing, Plaintiff completed a bare-bones motion to amend his emergency COVID-19 motion for release on bond pending appeal. Plaintiff complains that he was unable to cite case law in the motion.  Plaintiff requested emergency use of the law library on September 16, 2020.  Defendant Burt denied the request that same day, citing the memos issued on August 3 and 13, 2020.

On September 29, 2020, Plaintiff, acting as a trustee of the Thomas Family Trust, decided to invest trust funds in a general partnership.  Plaintiff requested copies of certain statutes from the law library.  Later that day, Defendant Mercer returned the form to Plaintiff, advising him that Defendant Hardiman had instructed her to deny the request because he did not have an active case number.  When Plaintiff complained that he should not need one, as he had documentation showing that he was a trustee, Defendant Mercer told him that he could not be a trustee or

administrator of a trust while in prison, but she advised Plaintiff that she would tell Hardiman of the situation and that he should consult his prisoner counselor.

Plaintiff resubmitted his library request on October 2, 2020.  That same date, the Michigan Supreme Court found that the statute under which the Governor had issued its COVID-19 emergency orders was unconstitutional.  Plaintiff alleges that the ruling necessarily rendered all MDOC COVID-19 protocols illegal.  He therefore submitted a formal request for direct access to the law library, asserting that the previously issued limitations on law-library access were void. Plaintiff received no response to his request.

In his next set of allegations, Plaintiff contends he was subjected to retaliation and denied access to the courts between October 5 and November 12, 2020.  Plaintiff alleges that Defendant Mercer made an unannounced visit to his housing unit on October 5, providing a limited mobile law library for more than 500 prisoners.  Plaintiff asked Mercer if she knew the status of his October 2, 2020, request to use the library.  Defendant Mercer told Plaintiff that he would have to kite Defendant Hardiman about the status of his request.  Defendant Mercer also stated that, because Plaintiff filed a baseless grievance against her, he would never get anything from the library.  Plaintiff then orally asked Mercer for an in-person library visit.  Mercer did not respond. As she left the unit, Mercer told housing officer Hammon that Plaintiff was being aggressive.  The following day, Plaintiff received notice that his October 2, 2020, request was denied as unfounded by Defendant Hardiman, on the ground that Plaintiff had fabricated a case number in order to receive free electronic library materials.

On October 9, 2020, Defendant Burt posted a memo about the facility's COVID-19 outbreak, informing inmates that 681 prisoners who had tested positive in August (including

Plaintiff) were now considered recovered under federal and state guidelines.  That same day, Plaintiff submitted another request for an in-person visit to the law library.

The Kent County Circuit Court issued an opinion and order on October 26, 2020, denying Plaintiff's motion for relief from judgment under Mich. Ct. R. 6.502(G)(2) and his accompanying motion for release on bond pending appeal.  The following day, Plaintiff submitted another request for an emergency in-person use of the law library to file a motion for reconsideration within the 21-day deadline.  Defendants never responded to his request.

Plaintiff was re-tested for COVID-19 on November 12, 2020.  The test result, which was negative, was returned on November 14.  Plaintiff complains that, had Defendants allowed him to use the library at that point, he could have still met his 21-day deadline for seeking reconsideration.  Plaintiff alleges that Defendant Hardiman failed to respond to Plaintiff's request, despite the fact that other prisoners were operating within the facility, including the law-library area.

Plaintiff contends that Defendants, by formulating and implementing COVID-19 protocols restricting access to the library, violated his right to access the courts under the First Amendment and violated the due process and equal protection clauses of the Fourteenth Amendment.  Plaintiff also alleges that, by denying him library privileges to research trust fund investments, Defendants Hardiman and Mercer deprived him of his right to freedom of contract under the Contracts Clause of Article I, section 10, violated the Privileges and Immunities Clause of Article IV, section 2, of the United States Constitution, and violated the Racketeer Influence and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968.  Plaintiff further contends that Defendants Hardiman's and Mercer's interference with his right to administer a trust constituted the state torts of invasion of privacy, intentional interference with contractual relations, trespass to

chattels, and nuisance.  In addition, Plaintiff contends, Defendant Mercer threatened to deprive Plaintiff of access to the courts in retaliation for Plaintiff having exercised his right to seek redress of grievances, which, Plaintiff also asserts, supports a state-law claim of gross negligence. Moreover, Plaintiff asserts that Defendants Burt, Hardiman, and Mercer impaired his rights under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages, on behalf of himself and the Thomas Family Trust.

## II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.   Access to the courts—First Amendment & Due Process

Plaintiff alleges that Defendants, by implementing and maintaining restrictions on in-person library visits and limiting his access to legal materials, violated his right under the First and Fourteenth Amendments to access the courts.  Plaintiff contends that the restrictions prevented him from filing a timely motion for rehearing on the denial of his motion for relief from judgment in his criminal action.  Plaintiff also alleges that Defendants violated his right to access the courts by not providing him access to legal materials related to his service as trustee to the Thomas Family Trust.

It is well established that prisoners have a constitutional right of access to the courts under the First Amendment's guarantee of the right to petition government and the Fifth and Fourteenth Amendment guarantees of the right to due process.  *Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.  430 U.S. at 817.  The Court further noted that in addition to law libraries or alternative sources of legal

7

knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them."  *Id.* at 824–25.  The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts.  *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.  *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).

Moreover, the underlying action must have asserted a non-frivolous claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).  In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in

the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

### A. Motion for relief from judgment

Plaintiff's motion for relief from judgment, while not a direct appeal of a conviction or a habeas action, arguably is the type of matter described in *Thaddeus-X*, 175 F.3d at 391, and *Lewis*, 518 U.S. at 355. Nevertheless, Plaintiff has failed to allege facts indicating that his motion for reconsideration of the denial of the motion was nonfrivolous. The Court notes that the motion for relief from judgment filed by Plaintiff on June 25, 2020, was his fifth such motion. He previously filed motions for relief from judgment on August 28, 2014, December 6, 2018, January 9, 2019, and June 27, 2019, all of which were denied. *See People v. Thomas*, No. 04-05980-FC (Docket ##13, 15, 18, 29), Kent Cnty. Cir. Ct. online access, https://www.accesskent.com/CourtNameSearch/searchROA.do?list_item=3 (search "Ronnie Thomas" & birthdate) (visited Oct. 13, 2021). Plaintiff filed two additional motions seeking relief from his convictions that were not titled motions for relief from judgment but that actually sought such relief: a motion to correct error, filed on September 19, 2018 (docket #25); and a motion to vacate the amended judgment, filed on August 10, 2020 (docket #7). *Id.*

After August 1, 1995, except in very limited circumstances, a prisoner may file only one motion for relief from judgment. Mich. Ct. R. § 6.502(G)(1). The exceptions to the one-motion rule include a retroactive change in the governing law, new evidence that was not discovered until after the first motion, or proof creating "a significant possibility that the defendant is innocent of the crime." Mich. Ct. R. 6.502(G)(2).

Plaintiff claims that he based his motion on newly discovered evidence, but he wholly fails to identify that evidence or to show what legal resources he needed but could not obtain that would have permitted him to file a motion for reconsideration.  During the COVID-19 restrictions on library access, Plaintiff filed the following motions and other documents:  a fifth motion for relief from judgment on June 25, 2020 (docket #11); a motion for immediate consideration to expedite hearing on a motion for release on bond on July 2, 2020 (docket #10); a counter-response to the prosecutor's response to his motion for relief from judgment on August 6, 2020 (docket #8); a motion to vacate the amended judgment of sentence on August 10, 2020 (docket #7); and a motion to amend his emergency COVID-19 motion for release on bond pending appeal (docket #6).  *People v. Thomas*, No. 04-05980-FC (Docket ##13, 15, 18, 29), Kent Cnty. Cir. Ct. online access, https://www.accesskent.com/CourtNameSearch/searchROA.do?list_item=3 (search "Ronnie Thomas" & birth date) (visited Oct. 13, 2021).  The trial court denied Plaintiff's motion to vacate the amended sentence on October 2, 2020, and denied the motion for relief from judgment on October 26, 2020.  *Id.*  Plaintiff also sought leave to appeal the trial court's decision, which was denied on the merits, because Plaintiff failed to demonstrate that the trial court erred in denying the successive motion for relief from judgment.  *People v. Thomas*, No. 358011 (Mich. Ct. App. Sept. 8, 2021) (Order, docket #9), https://www.courts.michigan.gov/c/courts/coa/case/358011/ (visited Oct. 13, 2021).  Plaintiff clearly was capable of filing a motion for reconsideration based on his prior filings and the trial court's decision, and he does not identify any legal resource he needed to do so.  As a result, he utterly fails to identify what injury the lack of access to the law library caused him.

Because Plaintiff fails to demonstrate actual injury in relation to his ability to file a motion for reconsideration of the motion for relief from judgment, he fails to state an access-to-the-courts claim related to any postconviction motion.

> **B.    Information about investing trust funds**

Plaintiff contends that the refusal of Defendants Hardiman and Mercer to allow him access to the law library to obtain information about his ability as trustee to invest trust funds in a general partnership deprived him of his right to access the courts.

As previously discussed, "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355. Plaintiff had no constitutional right to access a law library to pursue information related to his administration of a trust and investment of trust assets. As a consequence, he fails to state an access-to-the-courts claim.

## IV.    Equal protection

Plaintiff makes a single, conclusory statement concerning his claim that Defendants violated his right to equal protection. He states that, on November 14, 2020, after he tested negative for COVID-19 following his illness, he requested emergency law library access. Plaintiff did not receive permission to use the law library, despite the fact that he was COVID-negative "and other prisoner[s] are functioning/operating regularly within the facility, including the law library area." (Am. Compl., ECF No. 5-1, PageID.41.)

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or

discriminates against a suspect class of individuals.  *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998).  In addition, prisoners do not have a fundamental right to photocopies under the Constitution.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006).  "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)).  To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'") (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006)).  "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801

F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011));

*see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905

F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly

situated' to a comparator in 'all relevant respects.'").

Plaintiff alleges disparate treatment here, but his allegation is conclusory.

Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state

a claim under § 1983.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Plaintiff's vague

and conclusory allegation of discrimination fails to state an equal protection claim.

**V.      Privileges & Immunities Clause**

Plaintiff makes a conclusory allegation that Defendants' conduct in limiting his

library privileges violated the Privileges and Immunities Clause of Article IV, section 2 of the

United States Constitution.  The first sentence of that section provides:

> The Citizens of each State shall be entitled to all Privileges and Immunities of
> Citizens in the several States.

U.S. Const., Art. IV, § 2.  The Supreme Court has recognized that the Clause entitles the "citizen

of one State who travels in other States, intending to return home at the end of his journey . . . to

enjoy the "Privileges and Immunities of Citizens in the several States" that he visits."  *Saenz v.*

*Roe*, 526 U.S. 489, 501 (1999) (citing *Paul v. Virginia*, 8 Wall. 168, 180 (1868)).  The protection,

however, is not absolute and bars only discrimination based on the person's state citizenship.  *Id.*

at 501–02.

Plaintiff fails to allege facts that fall within the concerns of the Privileges and

Immunities Clause.  Plaintiff fails to allege discrimination, much less discrimination based on his

state of citizenship.  His claim therefore will be dismissed.

## VI.     Impairment of right to contract

Plaintiff argues that Defendants' limitations on his access to the law library have impaired his right to contract in violation of Article I, section 10, clause 1 of the Constitution.  The Contract Clause provides that "[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts."  U.S. Const. art. I, § 10, cl.1.  To prove a violation of this provision, a plaintiff must demonstrate that a "change in state law has 'operated as a substantial impairment of a contractual relationship.'" *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)).  When evaluating a plaintiff's impairment of contract claim, a court must ask whether "(1) a contract exists, (2) a change in law impairs that contract, and (3) the impairment is substantial." *Linton v. Comm'r of Health & Env't*, 65 F.3d 508, 518 (6th Cir. 1995).  If a contractual obligation is substantially impaired by the change in law, the court must further inquire whether the adjustment of the rights of the parties to the contractual relationship was reasonable and appropriate in the service of a legitimate and important public purpose. *See Allied Structural Steel*, 438 U.S. at 242–44.

Plaintiff utterly fails to allege the existence of a contract, much less that he suffered any impairment of that contract.  Indeed, his claim is wholly conclusory.  As previously discussed, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.  Plaintiff's allegations therefore fail to state a claim under the Contracts Clause.

## VII.    RICO violation

Plaintiff alleges that Defendants violated RICO, apparently by failing to allow him access to the library to assist him in making investments of trust assets.  Section 1964(c) of RICO, the provision upon which Plaintiffs' claim is founded, provides for a private cause of action:

14

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c) (1982) (emphasis added).  Section 1962 makes it illegal to engage in a pattern of racketeering activity. 18 U.S.C. § 1962(c)(1982).  "Racketeering activity" is defined in section 1961(1) in terms of a long list of federal and state crimes, including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343.  A "pattern of racketeering activity" requires at least two acts of racketeering activity within a ten-year period, 18 U.S.C. 1961(5), generally referred to as the "predicate acts" or "predicate offenses" underlying the RICO claim.

The Sixth Circuit and other federal courts consistently have rejected RICO claims concerning prison conditions.  *See, e.g.*, *Lee v. Michigan Parole Bd.,* 104 F. App'x 490, 493 (6th Cir. 2004) (affirming dismissal of conclusory RICO claim because plaintiff alleged no injury to his business or property); *Looper v. Gibson,* 63 F. App'x 877, 878 (6th Cir. 2003) (same); *Ziegler v. McGinnis*, 32 F. App'x 697, 699 (6th Cir. 2002) (finding no RICO claim based on MDOC telephone policy); *Hyland v. Martin*, No. 00-1269, 2000 WL 1647952, at *1 (6th Cir. Oct. 25, 2000) (affirming dismissal of prisoner RICO conspiracy claim regarding restrictions imposed on photocopying credit card); *see also Jenkins v. C.S.C./C.C.C.F. Corr. Services Corp.*, No. 99-1518, 2000 WL 1179772, at *1 (10th Cir. Aug. 21, 2000) (dismissing prisoner RICO claim alleging embezzlement from inmate accounts); *Petersen v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) (affirming dismissal of RICO claims alleging warden accepted bribes from prison food services company); *Taylor v. Ornoski*, 2006 WL 1646148 (N.D. Cal. June 14, 2006) (dismissing prisoner RICO claims seeking to challenge regulations restricting vendors who provide telephone service to inmates).

Plaintiffs' conclusory allegations fail to identify predicate acts upon which to base a RICO claim.  *See Iqbal*, 556 U.S. at 678–79 (requiring more than conclusory labels); *Twombly*, 550 U.S. at 555 (same).  Moreover, Plaintiffs' RICO claim fails to state a claim for relief because he does not demonstrate any injury to business or property, which is a prerequisite to a successful civil RICO claim.  *See* 18 U.S.C. § 1964(c); *Ziegler*, 32 F. App'x at 699; *see also Lee*, 104 F. App'x at 493; *Looper*, 63 F. App'x at 878.  Accordingly, Plaintiffs' RICO claim will be dismissed.

## VIII.  Retaliation

Plaintiff contends that Defendant Mercer violated his rights under the First Amendment by threatening to provide him no legal materials in retaliation for Plaintiff having filed a grievance against Mercer.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation.  *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  Plaintiff does not allege the content of the grievance he filed against Defendant Mercer.  Given the general lack of merit in Plaintiff's allegations in this complaint, it is doubtful that Plaintiff's grievance against Defendant Mercer was nonfrivolous.

Nevertheless, for the purposes of this opinion, the Court will assume that Plaintiff's grievance against Mercer amounted to protected conduct.

Plaintiff's claim, however, fails at the second step.   To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  *Thaddeus-X*, 175 F.3d at 396.  The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

A specific threat of harm may, in some circumstances, satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results).  However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations.  *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

Here, Defendant Mercer's vague threat could not reasonably deter a prisoner from exercising his rights.  *See, e.g., Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Shisler v. Golladay*, No. 2:19-cv-80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) (Golladay's threat that the ticket would be the least of the plaintiff's worries was "simply too vague" to support a First Amendment retaliation claim); *Dahlstrom v. Butler*, No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) ("Krause's threat[-- to 'get' a prisoner who files a grievance on Krause and 'steps out of line'--] is too vague and non-

specific to deter a person of ordinary firmness from engaging in protected conduct."); *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *7 (W.D. Mich. Dec. 19, 2018) ("Defendant's vague threat to 'get' Plaintiff does not carry the same seriousness . . . ."); *Johnson v. Govern*, No. 2:17-cv-125, 2018 WL 6321548, at *2 (W.D. Mich. Dec. 4, 2018) ("Govern's alleged threat to 'put a case' on Johnson . . . was too vague to constitute adverse action."); *Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at *11 (W.D. Mich. Apr. 6, 2017) ("Defendant DeMaeyer told Plaintiff that complaining would get him into a lot of trouble . . . . Such a vague threat of unspecified harm falls short of adverse action.").  Mercer's vague threat amounted to nothing more than an assertion that Mercer would not assist Plaintiff to obtain library access that already had been denied by Defendant Hardiman, Mercer's superior.  Mercer's threat therefore falls well short of demonstrating adverse action.  As a consequence, the Court will dismiss Plaintiff's retaliation claim for failure to state a claim.

## IX.    ADA claim

Plaintiff makes a single-sentence allegation that Defendants violated his rights under the ADA by denying him emergency in-person use of the law library because of his having contracted COVID-19.

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).  In order to state a claim under Title II of the ADA, Plaintiff must show (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability.  *See Tucker v. Tennessee*, 539 F.3d 526,

532-33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003).  The

term "qualified individual with a disability" includes "an individual with a disability who, with or

without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements

for the receipt of services or participation in programs or activities provided by a public entity."

42 U.S.C. § 12131(2).

Even assuming that Plaintiff could have been deemed to have a disability during

his two-week isolation period from August 6, 2020, the date he tested positive for COVID-19,

through August 20, 2020, Plaintiff's allegations do not support a conclusion that he was subjected

to discrimination on the basis of that disability.  Indeed, Plaintiff alleges that, on July 28, 2020, the

law library was closed to all prisoners—not just to prisoners who had been diagnosed with COVID.

He also alleges that, on August 3 and 13, 2020, prison administrators issued memoranda permitting

all prisoners to obtain law library materials only by request, subject to the same limitations

previously applied solely to segregation prisoners.  Thus, based on Plaintiff's own allegations, the

limitations on his access to the library were no different than those placed on any other prisoner.

Plaintiff's allegations demonstrate that he was not treated differently than any other prisoner during

the period of his alleged disability.

Moreover, to the extent that Plaintiff intends to allege that he was denied library

privileges after he recovered from COVID-19, Plaintiff also fails to allege facts suggesting that he

was subjected to discrimination on the basis of his disability or perceived disability.  Plaintiff

admits that Defendant Burt denied his request for in-person use of the law library on September

16, 2020, on the basis of the memos issued on August 3 and 13, 2020, which did not allow in-

person library visits to any prisoner.  Further, Plaintiff alleges no fact indicating that he was denied

in-person library privileges after November 14, 2020, the date he formally tested negative for

COVID-19, because of anything to do with a perception about his illness.  Indeed, he does not allege that the library was open at that time.

Because Plaintiff alleges no facts suggesting that he was denied any benefit or privilege or otherwise subjected to discrimination on the basis of his disability, he fails to state an ADA claim.

## X.    State-law claims

Plaintiff invokes a variety of state-law claims, including interference with his right to administer a trust, invasion of privacy, intentional interference with contractual relations, trespass to chattels, nuisance, and gross negligence.  Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state-law claims, the Court declines to exercise jurisdiction.  Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims.  *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against

needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.") (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## Conclusion

Upon review, Plaintiff's motion to file an amended complaint (ECF No. 5) will be granted and his proposed amended complaint (ECF No. 5-1) will be docketed as an amended complaint. Having conducted the review of the amended complaint required by the Prison Litigation Reform Act, the Court determines that Plaintiff's amended complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   October 25, 2021                         /s/ Hala Y. Jarbou
                                                  HALA Y. JARBOU
                                                  UNITED STATES DISTRICT JUDGE